UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ROBERT BURNS,  )
  )
    Plaintiff,  )
  )
v.  )  Cause No.: 2:12-CV-034
  )
LAKE COUNTY INDIANA SHERIFF  )
JOHN BUNCICH, et al.,  )
  )
    Defendants.  )

## OPINION AND ORDER

This matter is before the court on the motion for summary judgment and memorandum in support filed by Defendants Mac McClesky and Larry Chase (DE 48 and 49). Plaintiff Robert Burns filed a response in opposition to the motion (DE 59) and the Defendants filed a reply brief (DE 64). For the reasons discussed below, the motion is DENIED. The court will schedule further proceedings in this case by separate order.

## BACKGROUND

Plaintiff Robert Burns initiated this action on September 16, 2014. Amended Complaint (DE 23).[1] Burns, who is incarcerated in the Indiana Department of Corrections, is proceeding *pro*

---

[1] Actually Burns filed his original Complaint in this case on January 20, 2012, naming as defendants John Buncich, the Sheriff of Lake County, Indiana, the county itself, several Lake County commissioners, the warden of the Lake County Jail, and numerous other individuals who worked at the jail in some capacity. The court determined that the original Complaint was too vague and failed to state a claim, struck the filing, and allowed Burns an opportunity to file an Amended Complaint. *See* Court Order (DE 4). This case was later stayed to allow Burns additional time to gather documents he said he needed to file a proper Amended Complaint. *See* Court Order (DE 16). On September 16, 2014, Burns filed his Amended Complaint, which is the controlling complaint in this case. The court reviewed that Amended Complaint and lifted the stay so this case could proceed. *See* Court Order (DE 25). The only defendants remaining in this case are the movants, McClesky and Chase, both of whom served as chaplains at the Lake County Jail at the time of the alleged incidents giving rise to this lawsuit.

*se*. Burns explains in his Amended Complaint that he is a Jehovah's Witness and that McClesky and Chase, who served as chaplains in the Lake County Jail, deprived him of his right to practice his religion while he was incarcerated in the jail. Amended Complaint, p. 3. More specifically, Burns alleges that McClesky and Chase expressed disagreement or disapproval of Burns's religious beliefs (*id*.); that they ignored his repeated written requests (ten of them, he says, between January 1, 2011, and July 10, 2011) to be permitted to attend Sunday services with other Jehovah's Witnesses (*id*.); that they forced Burns to practice his religion in a hallway or crowded, noisy holding cell rather than in the jail's chapel (*id*., p. 4); that they denied him "religious visits" with his minister (*id.*); and that they maintained a policy that inmates who were Jehovah's Witnesses had to be placed on a list to attend services, but that no such requirement was imposed on inmates of other religions (*id*., pp. 7-8). Burns states that he "was in Lake County Jail for 94 weeks, but I [was] only allow[ed] to go to service about 20 times, and sometimes we had to have service through a crack in the door." *Id*., p. 6. He also states that he sent numerous letters and filed numerous prison grievances over this matter, but that the Defendants ignored them. *Id*. Burns brings this action under 42 U.S.C. § 1983, asserting that McClesky and Chase's actions "violated my 1st and 14th Amendment rights." *Id.* Burns seeks compensatory and punitive damages for the alleged constitutional violations. *Id*., p. 5.

In an Order issued on April 28, 2015, Magistrate Judge Paul R. Cherry, to whom this case is on partial referral pursuant to 28 U.S.C. § 636(b)(1)(A), instructed the Defendants to file a motion for summary judgment on the issue of whether Burns exhausted his administrative remedies before filing this suit, since this affirmative defense was pled in the Defendants' Answer. *See* Court Order (DE 42); Defendants' Answer (DE 41), p. 8, ¶ 8. The Magistrate

entered that Order *sua sponte* after wisely noting that the Defendants' affirmative defense (nestled in with many others in the Defendants' Answer) was a threshold issue that had to be addressed before the court can address the merits of the Plaintiff's claims. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), mandates that prisoners exhaust all available administrative remedies before they can file federal lawsuits alleging the deprivation of their constitutional rights. So the sole issue presented by the motion for summary judgment is whether Burns exhausted his administrative remedies. If he did not, this case must be dismissed since the court would lack the authority to address the merits of Burns's claims. *See Fluker v. Cty. of Kankakee*, 741 F.3d 787, 792 (7th Cir. 2013).

## STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Finally, since Burns is proceeding *pro se*, the court is required to liberally construe his complaint. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See also*, *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000) ("It is well-settled law that *pro se* complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers.").

## DISCUSSION

McClesky and Chase argue that they "are entitled to summary judgment, as a matter of law, because Burns filed his § 1983 action before exhausting all his administrative remedies, as required by 42 U.S.C. § 1997e." Defendants' Memorandum, p. 1. Section 1997e states in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

States may specify the precise administrative remedies that their inmates must exhaust. *King v. McCarty*, 781 F.3d 889, 894 (7th Cir. 2015). At the same time, the PLRA "'requires exhaustion only of remedies that are available. Prison authorities cannot immunize themselves from suit by establishing procedures that in practice are not available because they are impossible to comply with or simply do not exist.'" *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) (quoting *King*, 781 F.3d at 893). Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that Burns failed to pursue it. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). "When [defendants] assert their rights [to this affirmative defense] . . . then the judge must address the subject immediately. . . . The statute can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999). "'[A district] court must not proceed to render a substantive decision until it has first considered § 1997e(a).'" *Fluker v. Cty. of Kankakee*, 741 F.3d at 792 (quoting *Perez*, 182 F.3d at 536).

"Although not depriving the courts of subject-matter jurisdiction, the comprehensive administrative exhaustion requirement requires dismissal of any case in which an available administrative remedy has not been exhausted. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). Because the Defendants are the moving party, and because they bear the burden of proving the affirmative defense of lack of exhaustion, the court must 'extract all reasonable inferences from the evidence in the light most favorable to' . . . the nonmoving party." *Freed v. Truax*, 2013 WL 2383665, at *1 (N.D. Ind. May 30, 2013) (quoting *Matsushita Elec*., 475 U.S. at 586).

5

**1. The Lake County Jail Grievance Procedures.**

The Defendants maintain that the Lake County Jail had an inmate grievance procedure in place at the time of the incidents giving rise to this lawsuit and that Burns did not complete that procedure. Defendants' Memorandum, p. 5. Specifically, the Defendants state that "[t]he Lake County Jail has a two-stage grievance procedure in place. This consists of an initial or 'informal stage' (here inmates verbally submit a problem a problem to a correctional officer and then the turn supervisor) followed by a 'formal stage' (where inmates submit a written grievance to the Deputy Warden's Office followed by an appeal to the Warden and the Sheriff)." *Id.*, p. 7 (citing Leto Affidavit, ¶¶ 5-8).[2] This procedure, the Defendants point out, is clearly stated in the Inmate Handbook, which was "distributed to Robert Burns, and all other incoming inmates at the time of initial booking and classification into the Lake County Jail." Leto Affidavit, ¶ 4.

The Lake County Jail Inmate Grievance Procedure, as set forth in the Inmate Handbook, reads in its entirety as follows:

> **XVI. INMATE GRIEVANCE PROCEDURES**
>
> A. If you have a complaint or problem, you must make every effort to resolve it with the Corrections Officer. In other words, you must first discuss it with the officer assigned to your area. When the Corrections Officer is unable to satisfy the complaint, the Floor Supervisor will discuss the situation with you and supply you with the necessary form.
>
> B. If the complaint is not satisfactorily answered by the Turn Supervisor, he will furnish and instruct the inmate to complete and execute the formal grievance form within seventy-two (72) hours from the time of the alleged grievance. Give the

---

[2] Sargent Phyllis Leto "was assigned the supervision of the inmate grievance procedure; processing of inmate grievances and appeals filed under the procedures contained in the Lake County Jail Inmate Handbook; and supervision of keeping of the records of all formal written grievances filed by inmates with the Deputy Warden's Office and all appeals thereof that may be filed with the Warden or the Sheriff." Defendants' Exhibit 1, Leto Affidavit, ¶ 2.

completed form to any officer and he will pass it on to the Deputy Warden's Office to be answered within five (5) working days. If you are still dissatisfied, you may appeal within 72 hours in writing on the proper appeal form to the Warden. The Warden or Assistant Warden will give his decision within five (5) working days. If still dissatisfied, you may appeal, in writing, on the appeal form and direct it to the Sheriff. His decision is final. He has five (5) days to answer. The appeal form will be supplied by the Deputy Warden's Office.

**NOTE:**
1. The use of this procedure does not prevent you from seeking legal remedies.
2. You must sign the grievance form before it will be processed.
3. Use of the Grievance Procedures will not be held against you. Grievance information will not be put in your file.
4. Disciplinary actions are not grievable. You may appeal decisions to the Warden. (See Section XVIII.)

Defendants' Exhibit 2, pp. 17-18.

In her affidavit, Leto makes the following statements:

1. "Copies of all inmate grievances filed with the Deputy Warden's Office, and any appeals thereof filed with the Warden or the Sheriff, are preserved and maintained in the normal course of business in each inmate's permanent jail record and/or grievance record." Leto Affidavit, ¶ 7.

2. "During the week of July 8, 2015, I and members of my staff under my direct supervision and control, conducted a diligent and thorough search of all jail records and grievance records to determine what grievances and appeals, if any, Robert Burns filed with the Deputy Warden's Office, the Warden or the Sheriff since January of 2011 to December 2012." *Id*., ¶ 8.

3. "Since Burn's [sic] incarceration at the Lake County Jail, Robert Burns did not file an appeal to the Warden or Sheriff, as provided for in Section XVI(B) of the Lake County Jail Inmate Handbook." *Id*., ¶ 9.

Due to Burns's alleged failure to file any appeals, the Defendants maintain that they "are entitled to summary judgment . . . as no reasonable jury could decide the question of exhaustion of administrative remedies in Burn's [sic] favor." Defendants' Memorandum, p. 7.

7

## 2. Plaintiff's Compliance With Grievance Procedures.

The Defendants argue that "[a]s evidenced by the Affidavit signed by Sargent Phyllis Leto, keeper of the records of all inmate grievances, Burns has failed to exhaust his administrative remedies, as he never filed an appeal of any grievance with the Warden or the Sheriff as provided for in Section XVI (B) of the jail's grievance procedure." Defendants' Memorandum, p. 5 (citing Defendants' Exhibit 2, pp. 17-18 (Inmate Handbook) and Defendants' Exhibit 1, ¶¶ 5-9 (Leto Affidavit)). In his response in opposition to the motion, Burns readily concedes that he was aware of and familiar with "the Lake County Jail grievance and appeal form[.]" Plaintiff's Response, p. 1. But while he does not dispute that the grievance procedure was in place and that he was aware of it, he argues that he did, in fact, submit verbal and written grievances, as well as appeals. *Id*. He claims, however, that for many reasons his grievances were improperly handled or ignored altogether. *Id*., generally. In support of his position, Burns makes the following statements:

> 1. Many of his grievance papers were lost or missing following "shake downs" at the Jail. According to Burns, "[w]hen a shake down is going on inmates are not [allowed] to be in the cells and we can't see what's going on, so I didn't know Lake County Jail staff was removing my legal papers." *Id*., p. 1.
>
> 2. "I was denied grievance reports over and over[.]" *Id*.
>
> 3. He tried to give a grievance form to a Corrections Officer on November 5, 2012, but was unable to get any officer to accept the form until two days later. *Id*., p. 2. Even then, he claims, he never received a response. *Id*.
>
> 4. He had difficulty even obtaining grievance forms, and once had to give another inmate his lunch in exchange for a grievance form (which the other inmate had not yet filled out). *Id*.
>
> 5. He submitted grievances and appeals "and some [were] maliciously confiscated by jail staff." Plaintiff's Statement of Material Facts (DE 59-1), p. 1.

8

> 6. He does not deny that a grievance procedure was in place, but "[t]he procedure
> was not followed" and "the Turn Supervisor never came to see me about my
> complaints[.]" *Id.*, p. 2.

At another point in his supporting documents, Burns states that "Sgt. Leto refused to give me any grievances or respond to my letters or grievances. . . . I asked the mail lady to give Sgt. Leto, Warden Gore, Warden Ivetic, the Sheriff, and the two Chaplains McClesky and Larry Chase. All did not respond." Plaintiff's Affidavit (DE 59-2), p. 2, ¶ 5.

In addition to these statements, Burns submitted documents in support of his position. These include the following:

1) a sworn and notarized letter from Burns addressed to "Dep[uty] Warden Gore and Dep[uty] Warden Ivetic and also the Warden and Sheriff[]" dated October 11, 2011 (DE 59-6, p. 38);

2) a grievance form signed by Burns and dated November 16, 2011 (*Id.*, p. 53);

3) a grievance form signed by Burns and dated November 6, 2012 (*Id.*, p. 54);

4) a grievance form signed by Burns and dated April 1, 2012 (*Id.*, p. 55); and

5) a grievance form signed by Burns and dated March 24, 2012 (*Id.*, p. 56).

In the first document listed, Burns complains in his letter about his "7 or 8 grievances and appeals because I'm being denied the right to go to church with the Jehovah's [Witnesses]." (*Id.*, p. 38.) Also in that letter, he complained about being denied copies of his grievances and appeals, and voiced concern that his grievances were being ignored. The copies of grievance forms Burns provided indicate that he did, as he claims, submit grievances concerning, among other things, the alleged deprivation of his religious rights. On two of those forms, Burns checked a box near the top indicating that the grievance was intended as an appeal. (*Id.*, pp. 55 and 56.) In a nutshell, Burns's opposition to the Defendants' motion is based on what he characterizes as a mishandled

or faulty or corrupt jail grievance procedure–a procedure he claims he diligently attempted to follow, to no avail.

In their reply brief, McClesky and Chase reiterate their position that Burns failed to file appeals of his grievances according to Section XVI(B) of the jail's grievance procedure. Defendants' Reply, pp. 6-9. Obviously, this is the dispositive issue and the court will return to it shortly. But the Defendants' reply also raises a second issue, which will be addressed first. The Defendants maintain that the documents Burns submitted in support of his opposition to the motion for summary judgment are "improper[]" and "non-authenticated." Defendants' Reply, p. 3. The documents Burns submitted included, in addition to his own sworn statement and copies of his own grievance reports, copies of grievance forms and letters prepared by other inmates. *See* Plaintiff's Response (DE 59-1 through 59-6). Those documents include complaints by other inmates, who are also Jehovah's Witnesses, about problems they allegedly encountered at the Jail regarding their religious beliefs and practices. The Defendants contend (in a rather grammatically confusing sentence) that "the documents submitted by Burns fails to submit any are not admissible in a Court of Law and have not been authenticated. . . . Burns relies on documents that for all intents and purposes could have been created out of thin air." Defendants' Reply, p. 5. Finally, the Defendants state that they "are filing a separate motion to strike all or parts of Burn's [sic] Exhibits along with supporting brief." *Id*., p. 1, n. 1. Indeed, the Defendants did just that–filing a motion to strike simultaneously with their reply brief. (DE 62.) Magistrate Judge Cherry denied the motion. (DE 65.) In his Order, the Magistrate held that the Defendants "do not argue that [Plaintiff's] documents 'cannot be presented in a form that is admissible in evidence'–only that they *have not now* been presented in such a form." *Id.*, p. 1 (quoting

10

Fed.R.Civ.P. 56(c)(2)) (italics added). Accordingly, the Magistrate denied the Defendants' motion to strike and left it to this court to determine whether the documents Burns submitted should be considered in the context of summary judgment. *Id*. This is now a moot point, however, since the court did not consider any of these documents while evaluating the motion for summary judgment. The court's conclusion is based solely on the parties' pleadings and affidavits, and on exhibits submitted by Burns that are not contested–i.e., those documents that he prepared himself and which are based on his personal knowledge. The many pages of documents prepared by other inmates (or, in some instances, by unknown preparers) that Burns included in his submission of materials, which were clearly intended to bolster his arguments by showing that other inmates had complained about similar mistreatment, are not relevant at this point. The court concludes that Burns has raised a genuine issue of material fact regarding whether he complied (or was effectively prevented from complying) with the Lake County Jail grievance procedure, and that conclusion is reached without considering the documents about which the Defendants complain.

Returning to the issue at hand, the Defendants' reply brief adds nothing new to the mix. The Defendants merely reiterate their position that Burns failed to exhaust his administrative remedies, although they do throw in some general language referring to Burns's arguments as "unsupported bald assertions, . . . conclusory, speculative and self-serving statements[.]" Defendants' Reply, p. 5. This characterization of Burns's summary judgment evidence is misplaced and does not warrant a lengthy discussion. It is true that some of Burns's allegations are speculative or conclusory, such as his claim that McClesky and Chase harbored animosity toward all inmates who were Jehovah's Witnesses, or that they "acted with deliberate

indifference in regards to my religious freedom." Plaintiff's Statement of Genuine Issues (DE 59), p. 4. But this doesn't matter, because the court is not assessing the merits of Burns's substantive claims at this juncture. The only issue before the court, as already stated several times, is whether Burns complied with the Lake County Jail grievance procedure. This is a very narrow inquiry and Burns's "bald assertions" and "conclusory, speculative and self-serving statements" are irrelevant to that inquiry. So what if Burns believes McClesky and Chase are biased against Jehovah's Witnesses? That has nothing to do with the issue at hand, and Burns presents plenty of admissible evidence (such as his own sworn affidavit and copies of documents he prepared himself) on the specific issue of compliance with the grievance procedure to survive summary judgment, notwithstanding occasional conclusory or speculative statements imbedded in his pleadings.

As the Seventh Circuit recently explained, Section 1997e(a) mandates exhaustion of administrative remedies only when such remedies "*are available*." *White v. Bukowski*, 800 F.3d 392, 394 (7th Cir. 2015) (italics in original). If compliance with a jail's grievance procedure is futile or impossible, then administrative remedies are not "available" to the inmate and cannot form the basis for an affirmative defense. As stated above, the Defendants "cannot immunize themselves from suit by establishing procedures that in practice are not available because they are impossible to comply with or simply do not exist.'" *Thomas v. Reese*, 787 F.3d at 847 (quoting *King*, 781 F.3d at 893). In *Thomas*, the court of appeals–focusing on the issue of the "availability" of administrative remedies–explained as follows:

> "[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); see also *Dole v. Chandler*, 438 F.3d 804, 809

>   (7th Cir. 2006) (remedy is unavailable when prison employees "use affirmative
>   misconduct to prevent a prisoner from exhausting"); *Dale v. Lappin*, 376 F.3d
>   652, 656 (7th Cir. 2004) (remedy is unavailable when officials refuse to give
>   prisoner the form required to file grievance).

*Thomas*, 787 F.3d at 847-48; *see also*, *Turley v. Maue*, 2015 WL 6098912, at *3 (S.D. Ill. Oct. 16, 2015) ("If the administrative grievance process is rendered unavailable by prison officials . . . the exhaustion requirement is satisfied and there is no impediment to filing suit.") (citing *Thomas*, 787 F.3d at 847).

In the present case, the Defendants raised the affirmative defense of failure to exhaust administrative remedies, and it was their burden to prove this defense. *Freed*, 2013 WL 2383665, at *1. They have failed to do so in light of the evidence presented by Burns supporting his allegations that he attempted to comply with the grievance procedure and that his efforts to do so were impeded by jail employees or officials. Perhaps the Defendants ultimately can convince a jury that they did not interfere with Burns's access to the grievance procedure. But such a conclusion can only be reached after a credibility determination, which of course is the exclusive province of the jury. *Anderson v. Liberty Lobby*, 477 U.S. at 255 (weighing evidence and making credibility decisions are jury functions, and it is not appropriate for a judge to assume those functions when ruling on a motion for summary judgment). After considering the parties' pleadings and admissible evidence, and drawing all reasonable inferences in favor of the nonmovant, the court concludes that Burns has raised a genuine issue of material fact concerning whether he exhausted his administrative remedies.[3] Therefore, the Defendants' motion for

---

[3] One last point bears mentioning. Section XVI(B) of the Lake County Jail grievance procedure, on which the Defendants base their failure to exhaust argument, states that an inmate who is dissatisfied with a response to a grievance "*may* appeal . . . in writing on the proper appeal form to the Warden[.]" and, "[i]f still dissatisfied, you *may* appeal, in writing, on the appeal form

summary judgment on this issue must be denied.

**CONCLUSION**

For the reasons discussed above, the motion for summary judgment (DE 48) filed by Defendants Mac McClesky and Larry Chase is DENIED. The court will schedule further proceedings in this case by separate order.

Dated: December 21, 2015.

      /s/   William C. Lee
      William C. Lee, Judge
      United States District Court
      Northern District of Indiana

---

and direct it to the Sheriff." Defendants' Exhibit 2, pp. 17-18 (italics added). The use of the permissive word "may" (as opposed to a mandatory word, such as "shall" or "must") makes it appear as though an appeal is optional, which begs the question of whether an inmate who fails to file an *optional* administrative appeal has failed to exhaust his administrative remedies. If an inmate is dissatisfied with the response to his grievance but decides not to file an appeal with the Warden or the Sheriff, has he waived his rights under the procedure, i.e., failed to exhaust them? Or has he fulfilled the requirements of Section XVI(B), making him eligible to bring suit in federal court notwithstanding the fact that he did not pursue his (arguably optional) right to appeal? Perhaps this is nothing more than a matter of semantics, given that Section XVI(B) seems to imply that an appeal is mandatory if an inmate wishes to pursue the grievance procedure to its ultimate conclusion. But that's not clear from the express language of the Jail's rule. In this case it doesn't matter, since the court concludes that Burns has presented sufficient evidence of his compliance (or at least his attempts to comply) with the Jail's grievance procedure to survive the motion for summary judgment.